**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISON**

JANE DOE (J.H.),

Plaintiff,

v.

YOGESHWAR INC OF DAYTONA,

Defendant.

CASE NO. 6:26-cv-02194-CEM-NWH

## PLAINTIFF'S MOTION FOR LEAVE TO PROCEED PSEUDONYMOUSLY

Plaintiff, J.H. ("Plaintiff"), through her undersigned counsel, respectfully seeks leave of this Court to proceed pseudonymously because the disclosure of Plaintiff's identity on the public docket will violate a substantial privacy right for Plaintiff, causing her harm that outweighs the presumption of openness in judicial proceedings.

## MEMORANDUM OF LAW IN SUPPORT

Plaintiff is a survivor of sex trafficking and is bringing an action for damages against Defendant, Yogeshwar Inc of Daytona, doing business as the Royal Inn, under 18 U.S.C §§ 1591 and 1595, as enacted by the federal Trafficking Victims Protection Reauthorization Act ("TVPRA").

### I. SUMMARY OF THE RELEVANT FACTS

Plaintiff J.H. seeks to proceed pseudonymously, using her initials instead of her actual name. FAC ¶ 14. She does so because this case concerns the highly personal

nature of her victimization and because public disclosure would expose her to a serious risk of harm from her former trafficker and his criminal associates. FAC ¶ 15.

The First Amended Complaint alleges that J.H. was a young female who, at all material times, was addicted to drugs and was being sex trafficked by a trafficker known to employees at the Royal Inn. FAC ¶ 3. The trafficker used physical violence, sexual assault, trauma bonding, isolation, and J.H.'s drug addiction to cause her to engage in commercial sex acts at the Royal Inn over approximately seven years. FAC ¶ 4. He maintained constant supervision over J.H. at the Royal Inn through physical violence, threats against J.H. and her family, and exploitation of her drug dependency. FAC ¶ 5.

The FAC alleges that J.H. was trafficked from 2016 through 2023. FAC ¶ 39. She lived at the Royal Inn with her trafficker from approximately 2016 through 2019, and again from April 2021 through 2023. FAC ¶ 40. While living at the Royal Inn, J.H. saw an average of twenty-five "dates" per day, referring to buyers of sex. FAC ¶ 41. The trafficker forced and coerced J.H. to "walk" the property and surrounding streets to find sex buyers. FAC ¶ 42.

The trafficker expected J.H. to earn a set amount of money, used fear of bodily injury as a form of coercion, and beat J.H. to ensure compliance with his demands, including engaging in sex acts for his profit. FAC ¶ 44. On several occasions, the trafficker beat J.H. in front of one of Defendant's employees who lived on the property, and the trafficker paid that employee to not call law enforcement. FAC ¶ 45.

As a result, J.H. suffered serious harm, including physical, psychological,

financial, and reputational harm. FAC ¶ 46. While she was being trafficked, reporting what occurred, speaking with a lawyer, or pursuing a lawsuit were not possible because her trafficker would have killed or physically harmed her for even considering it. FAC ¶ 50. J.H. was not able to file a claim until 2023, when her trafficker was incarcerated and she was finally free from him. FAC ¶ 51.

## II. ARGUMENT

There is a public interest in allowing society to scrutinize government functions, including open access to attend and observe both criminal and civil proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 599-600 (1980). "The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical." *Doe v. Stegall,* 653 F.2d 180 (5th Cir. 1981). Party anonymity does not inhibit the public interest to an open trial in the way that closure of a courtroom does; rather, the public can still attend and observe a trial while the plaintiff proceeds under a pseudonym, thus preserving the constitutional interest in ensuring that "[w]hat transpires in the courtroom is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947).

Although Fed. R. Civ. P. 10(a) requires the title of the complaint to name all the parties, courts have allowed litigation under a pseudonym when a party establishes "a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992); *Doe v. Neverson*, 820 Fed.Appx. 984, 986 (11th Cir. 2020); *Plaintiff B v. Francis,* 631 F.3d 1310, 1315 (11th Cir. 2011); *Stegall*, 653 F.2d at 186.

Whether a party's right to privacy outweighs the presumption of openness should be evaluated by reviewing the totality-of-the-circumstances. *In re Chiquita Brands Int'l Inc.*, 965 F.3d 1238, 1247 n.5 (11th Cir. 2020); *Plaintiff B*, 631 F.3d at 1315.

The Eleventh Circuit has laid out a two-part test to determine if anonymity is appropriate. *Plaintiff B*, 631 F.3d at 1316 (citing *Stegall*, 653 F.2d at 186). ***Part One*** of the test analyzes if the plaintiff has a substantial privacy right. A substantial privacy right may exist where the plaintiff (1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *Chiquita Brands*, 965 F.3d at 1247 (emphasis added); *see also Plaintiff B*, 631 F.3d at 1316. ***Part Two*** of the test also requires the court to evaluate other factors, including if the plaintiff is a minor, if there was violence or threats of violence, or if there is a unique threat of fundamental unfairness to the defendant. *Id.* (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)). Notably, these factors are not "prerequisites to bringing an anonymous suit," but are guideposts for the court's "fact-sensitive" determination. *Freedom from Religion Found., Inc. v. Emanuel Cty. Sch. Sys.*, 109 F. Supp. 3d 1353, 1357 (S.D. Ga. 2015) (citing *Stegall*, 653 F.2d at 186).

**A. Plaintiff has a substantial privacy right because without pseudonymity, Plaintiff would be compelled to disclose information of utmost intimacy.**

Plaintiff has a substantial privacy right in guarding the sensitive and highly

personal information she must disclose in this sex trafficking litigation. Evaluating "the issue of pseudonymity requires weighing the scales between the public's interest and the rights to privacy advanced by the movant … [and] privacy interests are recognized in particular circumstances to be in the public interest." *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998).

In evaluating what information constitutes that of the utmost intimacy, this District has held that victims of rape, human trafficking, and sexual battery have a strong interest in protecting their identities, so that other victims will not be deterred from reporting such crimes. *See Doe v. Ricky Patel, LLC,* No. 6:19-cv-2414-Orl-40LRH, 2020 U.S. Dist. LEXIS 252754, at *5 (M.D. Fla. 2020) (it is "unquestionably intimate" for a sex trafficking survivor to have to reveal instances of rape, physical abuse, exploitation, psychological torment, kidnapping, and false imprisonment at the Defendants' hotels); *A.D. v. Cavalier Mergersub LP*, No. 2:22-cv-095-JES-NPM, 2022 U.S. Dist. LEXIS 169979, at *7 (M.D. Fla. 2022) (disclosure of details of rape and coercion into explicit sexual conduct are matters of the utmost intimacy); *C.K. v. Wyndham Hotels & Resorts, Inc.*, No. 3:19-cv-1412-J-34MCR, 2020 U.S. Dist. LEXIS 263766, at *4 (M.D. Fla. 2020) (Plaintiff's need for anonymity 'outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings'"); *S.M. v. 4201 Orlando, Inc.*, No. 6:24-cv-673-PGB-EJK, 2024 U.S. Dist. LEXIS 71554, at *5 (M.D. Fla. 2024) (disclosure of sex trafficking, including forced sexual service and physical assaults, are matters of the utmost intimacy); *Fla. Abolitionist, Inc. v. Backpage.com LLC,* No. 17 Civ. 218, Doc. 46 at 2-4 (M.D. Fla. 2017)

(sex trafficking plaintiff would be required to disclose and discuss information related to her victimization by her traffickers and their clients which outweighs the presumption of openness in judicial proceedings).

**B. Plaintiff's substantial privacy right outweighs the presumption of openness in judicial proceedings.**

Part Two of the two-part test for pseudonymity outlined by the Eleventh Circuit in *Plaintiff B* evaluates whether the substantial privacy right outweighs the presumption of openness in judicial proceedings. To determine this, the court must weigh all the factors involved, including but not limited to whether the plaintiff is a minor, if there was violence or threats of violence, or if there is a unique threat of fundamental unfairness to the defendant. *Id.*

"The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical." *Stegall*, 653 F. 2d at 185. "The public right to scrutinize governmental functioning, is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself, as the assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Richmond Newspapers, Inc.*, 448 U.S. at 599-600.

**1. Violence and threats of violence were used to traffic Plaintiff.**

The FAC alleges that violence and threats of violence were central methods used to traffic and control Plaintiff. The trafficker used physical violence, sexual assault, trauma bonding, isolation, and J.H.'s drug addiction to cause her to engage

in commercial sex acts at the Royal Inn over approximately seven years. FAC ¶ 4. He maintained constant supervision over J.H. and controlled her through physical violence, threats against J.H. and her family, and exploitation of her drug dependency. FAC ¶ 5. The FAC further alleges that the trafficker used fear of bodily injury as a form of coercion and beat J.H. to ensure her compliance with his demands, including engaging in sex acts for his profit. FAC ¶ 44. On several occasions, he beat J.H. in front of a Royal Inn employee who lived on the property and paid that employee to look the other way and not call law enforcement. FAC ¶ 45.

Plaintiff remained a trafficking victim until 2023, when she was finally able to escape after her trafficker was sentenced to life in prison for crimes including human trafficking. FAC ¶ 48

**2. Public identification of Plaintiff's identity will severely exacerbate Plaintiff's harm.**

Public identification of Plaintiff would likely cause additional severe harm. If Plaintiff is publicly identified, it will further exacerbate the ongoing psychological harm and trauma Plaintiff already suffers. Human trafficking and sexual abuse strip its victims of their dignity and value as a person; it erases the victim's choice and makes the victim doubt their own self-worth.[1]

There is a psychological vulnerability and harm to even the strongest of sex trafficking survivors that is easily exacerbated. Survivors of sex trafficking and sexual

---

[1] United Nations, *Breaking the Silence on Human Trafficking*, (Mar. 25, 2009), available at https://www.unodc.org/unodc/en/frontpage/breaking-the-silence-on-human-trafficking.html.

abuse who have been able to thrive after their ordeal and speak openly about the offenses they were subject to, explain that it takes a great deal of difficult work to reach that point.[2] Even at the most advanced stages of healing, many survivors are not willing to go public with their stories. Survivors struggle with "re-living the traumas over again through flashbacks, overwhelming intrusive and negative thoughts, feeling consumed by emotions of shame and guilt, thinking that they are living in hiding and unable to let themselves be truly seen, and experiencing fleeting feelings of dignity and respect."[3] Plaintiff does not speak openly about her past victimization, and instead, has tried to regain the normal life she was deprived of. Thrusting her into the public spotlight will cause severe psychological harm and could be catastrophic to her recovery.

Additionally, victims of sex trafficking and sexual abuse are also uniquely vulnerable in this current age of technology, where every thought, whether accurate or inaccurate, gets published online in social media. *See Cabrera*, 307 F.R.D. at *7 ("Having the plaintiff's name in the public domain, especially in the Internet age, could subject the plaintiff to future unnecessary interrogation, criticism, or psychological trauma, as a result of bringing this case.") Traffickers are experts in psychological manipulation; they use degrading and dehumanizing tactics to keep their victims enslaved and in fear. To certain segments of society, the victims are sometimes viewed

---

[2] Ruth Rondon, *Understanding the 4 Stages of Recovering from Sex Trafficking*, Human Trafficking eLearning, (2017) 1- 7, 5, available at https://humantraffickingelearning.com/wp-content/uploads/2017/09/Understanding-the-four-stages-of-recovery-from-sex-trafficking.pdf.
[3] *Id* at 3.

as "at fault" for what happened to them. Therefore, to subject Plaintiff to such unsolicited feedback online through public disclosure of her identity—when what they each seek from this litigation is to come a step closer to being made whole again—will perpetuate the same harm that she has already suffered. Identification of Plaintiff will likely cause additional severe mental and psychological harm, which weighs in favor of allowing Plaintiff to proceed under a pseudonym.

**3. Plaintiff is only requesting leave to proceed pseudonymously in pretrial proceedings at this stage of the litigation.**

Plaintiff is only requesting to proceed pseudonymously in pretrial proceedings at this time. Should Plaintiff determine that pseudonymity is merited for trial, a separate motion will be filed at the appropriate time. Courts recognize that the public's interest in open judicial proceedings is heightened as a case approaches trial, and the potential prejudice to the defendant may shift. *See Doe v. Swearingen,* No. 18-24145-Civ-WILLIAMS/TORRES, 2019 U.S. Dist. LEXIS 622, at *17 (S.D. Fla. 2019) (citing *John Doe 140 v. Archdiocese of Portland in Oregon*, 249 F.R.D. 358, 361 (D. Or. 2008) ("courts are mandated to consider possible prejudice to defendants at every stage of these proceedings, and to consider whether the proceedings may be structured so as to minimize that prejudice, defendants should retain the right to refile their request later in this action, as [plaintiff]'s claims approach trial."); *Doe (K.B.) v. Hare Krishna Savannah Hotel, LLC,* 346 F.R.D. 150, 154 (N.D. Ga. 2024).

**4. Plaintiff will provide her identity to the Defendants.**

As a general rule, courts nationwide have determined that while a plaintiff's

identity may be protected from the general public, it will prejudice the defendant to not know whom to investigate and will frustrate the defendant's ability to participate meaningfully in discovery without knowing the identity of the accuser. On the other hand, if the public is barred from knowing the identity of a plaintiff, but the defendant is made aware of the identity, the defendant is not prevented from "conducting a full range of discovery in building a defense for trial." *Plaintiff B,* 631 F.3d at 1318-19. It is well established that when balancing the different interests involved in cases such as these, "courts have permitted parties to enter into protective orders that permit the limited disclosure of a plaintiff's identity for discovery purposes on the condition that the defendants do not disclose it to the general public." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).

Anonymity would be limited to the pseudonym that the Plaintiff uses, not to who the Plaintiff is in every other respect. *See James v. Jacobson*, 6 F.3d 233, 243 (4th Cir. 1993). Plaintiff is willing to provide her full name and identifying information to Defendants, subject to a protective order. Furthermore, there are no alternative mechanisms for protecting the identity of Plaintiff. With this concession in place, the Defendants will not be prejudiced if Plaintiff's motion is granted and, therefore, this factor weighs in favor of allowing Plaintiff to proceed under a pseudonym.

## III. CONCLUSION

For the reasons stated above, Plaintiff, J.H. requests that this Court grant her leave to proceed pseudonymously by using her initials instead of her full name on the public docket in the case.

## LOCAL RULE 3.01(g) CERTIFICATION

I hereby certify no Defendants have been served to date so no meet and confer can take place regarding this motion.

Date: October 16, 2026

Respectfully Submitted,

*/s/ Shannon Snedaker*
Shannon Snedaker, (FBN: 028042)
Benjamin Jones, (FBN: 44285)
Snedaker Law Firm
3112 W. Lake Mary Blvd.
Lake Mary, FL 32746
T: (407) 553-3529
E-mail: shannon@snedakerlaw.com
benjamin@snedakerlaw.com
adrianne@snedakerlaw.com

*/s/ Lisa Haba*
Lisa D. Haba (FBN: 077535)
Maria Bryant (FBN: 0055332)
The Haba Law Firm, P.A.
3112 W. Lake Mary Blvd.
Lake Mary, FL 32746
T: (844) 422-2529
E-mail: lisahaba@habalaw.com
mariabryant@habalaw.com
legalassistant@habalaw.com

*Attorneys for Plaintiff*